■ LIBERTY GROUP HOLDINGS, INC., et al., Appellants, v CITY OF NEW YORK et al., Respondents. [773 NYS2d 36]—

Order, Supreme Court, New York County (Michael Stallman, J.), entered January 14, 2003, which, in an action for defamation, denied plaintiffs' motion for leave to serve a late notice of claim, and dismissed the complaint, unanimously affirmed, without costs.

It appears that in December 2000, plaintiff corporation (Liberty) was awarded a food contract with the Board of Education; on March 14, 2001, defendant City Comptroller's office wrote a letter to the Board of Education suggesting connections between Liberty and organized crime that were not disclosed in Liberty's application questionnaire; on March 20, 2001, the New York Times reported that based on this information from the Comptroller's office, the Board of Education canceled Liberty's contract; on March 22, 2001, the Board of Education announced that it was immediately ceasing business with Liberty; on June 15, 2001, immediately after an investigation commissioned by the Board of Education determined that Liberty had no connections to organized crime, the Board and Liberty

agreed to reinstate their contract; and on June 12, 2002, Liberty and its principal moved for leave to serve a late notice of claim. Explaining the delay in seeking such leave, plaintiffs state that at first they were hopeful that the matter would be settled in their favor, as it was, and then, once the contract was reinstated, that business would thrive by the summer of 2001. However, by the summer of 2001, it became clear that the defamation had harmed them, making it impossible to do business as usual. Although they provided the Comptroller's office with a "courtesy" complaint on August 23, 2001, they did not commence a lawsuit because they allegedly feared the then Comptroller, who was running for Mayor, would retaliate "in much the same fashion he had with the New York Times" just before he announced his candidacy. After January 1, 2003, when the then Comptroller's term of office ended, plaintiffs state that they were beset with lawsuits and collections by their creditors and lacked the resources to retain counsel to sue the City. The attorney they retained in April 2003 then needed two more months to prepare the action finally brought in June 2003, three days before the statute of limitations expired.

On appeal, plaintiffs do not attempt to excuse this delay. Instead, they argue that the Comptroller, who was responsible for the letter underlying their claim and—given plaintiffs' immediate notice of their objections to that letter, and, further, in light of the results of the Board of Education's investigation—could not have been prejudiced by the delay. Therefore they urge that the absence of a reasonable excuse for the delay should not be fatal to their claim. However, the circumstances do not show that the Comptroller at all times knew that plaintiffs had a claim for defamation. "[K]nowledge of the facts underlying an occurrence does not constitute knowledge of the claim. 'What satisfies the statute is not knowledge of the wrong. What the statute exacts is notice of the "claim" ' " (*Chattergoon v New York City Hous. Auth.*, 161 AD2d 141, 142 [1990] [quoting *Thomann v City of Rochester*, 256 NY 165, 172 (1931)], *affd* 78 NY2d 958 [1991]). Indeed, plaintiffs' allegations tend to show that defendants had no reason to suspect that plaintiffs' business was harmed by the alleged defamation until five months later, when plaintiffs sent them the courtesy complaint. Thereafter, based on an unsubstantiated lack of resources to retain an attorney, they waited another 10 months to seek leave to serve a late notice of claim. We reject plaintiffs' argument that the absence of a reasonable excuse for this last, entirely deliberate delay was without consequence, and, indeed, we deem it fatal to their claim (*see Potts v City of N.Y. Health & Hosps. Corp.*, 270 AD2d 129 [2000]). Concur—Mazzarelli, J.P., Saxe, Friedman, Marlow and Gonzalez, JJ.